[No. A044154. First Dist., Div. Five. Sept. 6, 1989.]

UNITED PUBLIC EMPLOYEES, LOCAL 790, SEIU, AFL-CIO, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
SAN FRANCISCO COMMUNITY COLLEGE DISTRICT, Real Party in Interest.

COUNSEL

Stewart Weinberg and Van Bourg, Weinberg, Roger & Rosenfeld for Petitioner.

Peter Haberfeld, Christine A. Bologna, Robert G. Thompson and Bernard McMonigle for Respondent.

James G. Seely and Virginia A. Riegel for Real Party in Interest.

OPINION

HANING, J.—Petitioner United Public Employees, Local 790, SEIU, AFL-CIO (Union), which represents certain noncertificated, or classified employees in the education system, seeks review of a decision of respondent Public Employment Relations Board (PERB) holding that real party in interest San Francisco Community College District (District) is not a public school employer of the classified employees. We stayed the PERB decision, issued a writ of review and heard oral argument. We now annul the decision and hold that the District is a public school employer of the classified employees.

## FACTS AND PROCEDURAL HISTORY

On May 1, 1986, in *Barnes v. San Francisco Community College District* (May 1, 1986) PERB Order No. Ad-153 [case No. SF-CE-884], a three-member majority of PERB held that the District was required to collectively bargain with the Union because the District was a public school employer of the classified employees under the provisions of the Educational Employment Relations Act (EERA). (Gov. Code, §§ 3540-3549.3.) The District and the City and County of San Francisco (hereafter the City or San Francisco) were joint employers of classified employees who worked at the District. Two members of PERB dissented. It appears that Division Two of this court declined to review the decision because it was not a final order.

The instant case arose from an unfair practice charge filed with PERB by the Union. The basis of the charge was that the District had unilaterally decided that qualified classified employees would no longer be temporarily assigned to work as certificated teachers. The District raised several defenses to the charge, including the defense that PERB lacked jurisdiction

because it only had jurisdiction over cases involving public school employers and employees, and the District did not fall into such category.

Relying on *Barnes* v. *San Francisco Community College District, supra,* an administrative law judge issued a proposed decision which ruled against the District on the jurisdictional issue, but then dismissed the case on another ground. The District filed exceptions to the ruling on the jurisdictional issue. In an opinion entitled *United Public Employees, Local 790, SEIU, AFL-CIO* v. *San Francisco Community College District* (June 27, 1988) PERB Dec. No. 688 [case No. SF-CE-1114], PERB reversed its earlier position and held that the District was not a joint employer of classified employees who worked at its facilities; their sole employer was the City.

This timely petition followed.

## I

Union contends the District should have been precluded from filing exceptions before PERB, because it was not "aggrieved" by the proposed decision of the administrative law judge. This contention lacks merit. The PERB regulation governing exceptions—title 8 of the California Code of Regulations, section 32300, subdivision (a), provides as follows: "A party may file with the Board itself an original and five copies of a statement of exceptions to a Board agent's proposed decision . . . ." Thus, as stated in the PERB form letter which was sent to all parties in the present case, "Any party to the proceeding may file with the Board itself a statement of exceptions to the Proposed Decision."

## II

The Union's principal contention is that PERB erred when it concluded that under the EERA the District is not a "public school employer" of the classified employees involved in the instant case. This contention has merit.

In *Banning Teachers Assn.* v. *Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 [244 Cal.Rptr. 671, 750 P.2d 313], the Supreme Court summarized the purpose of EERA and PERB as follows: "The EERA establishes a system of collective bargaining for employees of public school districts . . . . Enacted in 1975 (. . . codified as [Gov. Code,] §§ 3540-3549.3), the *EERA requires school districts to negotiate in good faith with duly selected exclusive representatives of its employees* as to appropriate

statutorily defined subjects within the scope of representation. ([Gov. Code,] §§ 3543.3, 3543.5.) [¶] The EERA created PERB as an independent board . . . and vested it with a broad spectrum of powers and duties, including the responsibility to investigate unfair practice charges or alleged violations of the EERA and 'take such action and make such determinations in respect of these charges or alleged violations as the board deems necessary to effectuate the policies of this chapter.' ([Gov. Code,] § 3541.3, subd. (i).)" (Italics added.)

Government Code section 3540 provides, in pertinent part: "This chapter shall not supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations, so long as the rules and regulations or other methods of the public school employer do not conflict with lawful collective agreements. . . . [¶] It is the further intention of the Legislature that any legislation enacted by the Legislature governing employer-employee relations of other public employees shall be incorporated into this chapter to the extent possible. The Legislature also finds and declares that it is an advantageous and desirable state policy to expand the jurisdiction of the board created pursuant to this chapter to cover other public employers and their employees, in the event that this legislation is enacted, and if this policy is carried out, the name of the Educational Employment Relations Board shall be changed to the 'Public Employment Relations Board.'" Thus, under the statutory language as construed by the Supreme Court, the EERA only applies to employees of public school employers. Accordingly, the District is required to bargain with the Union if it is a public school employer of the classified employees.

Government Code section 3540.1, subdivision (j), provides: "As used in this chapter: 'Public school employee' or 'employee' means any person employed by any public school employer except persons elected by popular vote, persons appointed by the Governor of this state, management employees, and confidential employees." Government Code section 3540.1, subdivision (k), provides: "As used in this chapter: 'Public school employer' or 'employer' means the governing board of a school district, a school district, a county board of education, or a county superintendent of schools."

In the instant case, the District is an employer as defined by the statutes. However, the issue is complicated because the involved employees are, at least in some respects, subject to the jurisdiction of the City. Education Code section 88137 provides: "In every community college district coterminous with the boundaries of a city and county, employees not employed in

positions requiring certification qualifications shall be employed, if the city and county has a charter providing for a merit system of employment, pursuant to the provisions of such charter providing for such system and shall, in all respects, be subject to, and have all rights granted by, such provisions; provided, however, that the governing board of the district shall have the right to fix the duties of all of its noncertificated employees." Education Code section 88000 provides: "Article 1 (commencing with Section 88000), Article 2 (commencing with Section 88050), Article 4 (commencing with Section 88160), Article 5 (commencing with Section 88180), Article 6 (commencing with Section 88190), and Article 8 (commencing with Section 88240) and Chapter 1 (commencing with Section 87000) shall apply to all classified employees of a community college district, including those authorized in Section 72419 whether a merit or nonmerit system district as authorized by this chapter unless the section specifically limits its application to nonmerit system districts. [¶] These provisions shall not apply to employees of a community college district lying wholly within a city and county which provides in its charter for a merit system of employment for employees employed in positions not requiring certification qualifications." The parties agree that these sections apply only to San Francisco, which has a charter and a merit system. It appears that the only employees affected are those involved in the instant case and those working at the San Francisco Unified School District. (See *Evans* v. *San Francisco Unified School Dist.* (1989) 209 Cal.App.3d 1478 [258 Cal.Rptr. 15].)

■    PERB's construction of statutes will generally be followed unless it is clearly erroneous. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [191 Cal.Rptr. 800, 663 P.2d 523].) However, this standard of review has little meaning in the present case because PERB has inconsistently construed the above statutes in two decisions: the *Barnes* case, and the instant decision. In both cases PERB held that San Francisco was an employer of the classified employees. However, the *Barnes* case concluded that the District was a joint employer, while the instant decision concluded that San Francisco was the sole employer.

In *Barnes, supra,* the majority reasoned that Education Code section 88137 does not place the employees solely in control of the City. Rather, "the final provision of the section leads to a contrary conclusion. It says that the governing board of the District shall have the right to fix the duties of *its* employees. . . . [I]t expressly refers to those workers as employees of the *District,* and affirms the District's authority, as the employer, to direct the employees in their work." (PERB Order No. Ad-153 [case No. SF-CE-884] at p. 12, italics in original.) Further, "[t]he record indicates that the District . . . can fix the duties of its employees and, more importantly, it can

discipline them." (*Id.,* at p. 14.) *Barnes* also held that the City's charter does not support the argument that the District cannot be an employer since it is merely a department of the City: "Charter section 5.104 states, in pertinent part: 'Notwithstanding the provisions of Section 5.100 or of any other provisions of this charter, . . . the community college district of the city and county shall be under the control and management of a board of education . . . .' The clear intent of this language is that, 'notwithstanding' any other charter provision, the District be under the 'control and management' of its board of education, rather than the City board of supervisors." (*Id.,* at pp. 6-7.)

Accordingly, *Barnes* concluded that "Education Code section 88137 establishes the City's civil service commission as the personnel commission which will serve the District and its classified employees. It does not follow from this that the District is thereby stripped of its status as the employer of those employees." (PERB Order No. Ad-153, at p. 13.) "While the City and/or Commission appears to control fundamental matters of wages and hours, it remains clear from Education Code section 88137 and Charter section 5.104 that the operation and management of the school system, including the power to fix and assign duties of classified employees, is reserved solely to the governing board of the District." (*Id.,* at p. 16.)

*Barnes* also rejected an argument by the District that Education Code section 88000 exempted the District from the EERA. "In our view, all section 88000 purports to do is exempt the District from the requirements of certain sections of the *Education Code.* EERA, however, is part of the Government Code. Neither Chapter 1 nor Chapter 4 pertains to collective bargaining. Neither section 88000 nor section 88137 refers to EERA or the jurisdiction of PERB and, clearly, neither specifically exempts the District from the requirements of EERA. Nor does the language of EERA, itself, specifically exempt the District from its coverage." (PERB Order No. Ad-153, at p. 11, italics in original.)

In the instant decision, PERB reasoned as follows: "As a result of the combined reading of sections 88000 and 88137, the only statutory power granted to the District with regard to 'its' classified employees is the right to assign duties. The employees themselves enjoy *none* of the Education Code benefits and protections given to all other classified school employees in the State of California. Rather, they must look to San Francisco's charter and civil service rules. PERB is not empowered to grant the District any additional authority over those employees. Such a grant of authority must come from the San Francisco charter." (PERB Dec. No. 688 [case No. SF-CE-1114] at p. 10, italics in original.)

We conclude that *Barnes* is better reasoned, since it has most appropriately construed the statutes and analyzed the record. In construing the relevant statutes, we are guided by several rules of statutory construction. ■ A court "'. . . should first turn to the words of the statute to determine the will of the Legislature [citations] and give effect to the statute according to the usual, ordinary import of the language employed in framing it. [Citations.]'" (*Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 495-496 [138 Cal.Rptr. 185].) "[E]very word, phrase or provision is presumed to have been intended to have a meaning and perform a useful function." (*Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421].) ■ Another rule "dictates that effect be given, if possible to every word, clause and sentence. [Citation.] As a corollary, a statute should be construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another." (*Stewart* v. *Board of Medical Quality Assurance* (1978) 80 Cal.App.3d 172, 179 [143 Cal.Rptr. 641].)

■ "The construction of a proviso as a necessary condition is normal, certainly when the statutory rule which it modifies is in derogation of the common law and there are no indications of another intent." (*Larrus* v. *First National Bank* (1954) 122 Cal.App.2d 884, 889 [266 P.2d 143].) ■ A specific provision concerning a particular subject will control with respect to that subject, as against a general provision, even if the general provision is broad enough to include the subject. (*Diamond International Corp.* v. *Boas* (1979) 92 Cal.App.3d 1015, 1031 [155 Cal.Rptr. 616].) ■ However, an overriding principle in this area is that the individual portions of a statute should be harmonized with each other and the entire statute should be harmonized with the body of law of which it forms a part. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; see also Gov. Code, § 3540.)

Government Code section 3540, along with the rest of the EERA and Education Code sections 88000 and 88137 all seek to regulate the relationship between employees and public agencies involved in the education process. Each of the statutes regulates the status of the classified employees involved in the instant case. They are the types of employees covered by the EERA. Indeed, it appears that all classified employees outside of San Francisco are covered by the EERA, as are the districts which benefit from their services. ■ The two Education Code sections (88000 and 88137) subject the instant employees to the City charter, but the effect of these statutes is, in turn, limited by the proviso to section 88137 which states "that the governing board of the district shall have the right to fix the duties of all of

its noncertificated employees." The key phrase is "its noncertificated employees." In context, the plain meaning of the phrase is that the governing board of a community college district is the employer of noncertificated employees working at the college. The only way to give effect to such language is to interpret it to mean that a District can also be the employer of noncertificated employees. Moreover, such interpretation also adheres to the above cited rules that a proviso conditions the general language of the statute and a specific provision prevails over a general provision. The general language of Education Code sections 88000 and 88137 seems to mandate that San Francisco is the employer of these employees, while the proviso adds that the District can also be their employer. Further, section 88000 makes no attempt to determine who is the employer, and does not mention the EERA. Finally, since the EERA provides that the District is the employer, the Education Code sections provide that the City is the employer, and the proviso to section 88137 classifies the employees as the District's employees, the statutory scheme is harmonized because the City and the District are authorized to act as joint employers.

The parties agree that "where two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' . . . ." (*N.L.R.B.* v. *Browning-Ferris Industries, Etc.* (3d Cir. 1982) 691 F.2d 1117, 1124 [73 A.L.R.Fed. 597].) Government Code section 3543.2, subdivision (a), defines the essential terms and conditions of employment under the EERA: "The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. 'Terms and conditions of employment' mean health and welfare benefits as defined by Section 53200, leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security pursuant to Section 3546, procedures for processing grievances pursuant to Sections 3548.5, 3548.6, 3548.7, and 3548.8, and the layoff of probationary certificated school district employees, pursuant to Section 44959.5 of the Education Code. In addition, the exclusive representative of certificated personnel has the right to consult on the definition of educational objectives, the determination of the content of courses and curriculum, and the selection of textbooks to the extent such matters are within the discretion of the public school employer under the law. All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating, provided that nothing herein may be construed to limit the right of the public school employer to consult with any employees or employee organization on any matter outside the scope of representation."

█ A civil service commission and a governing board can be joint employers. (*Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249].)

### III

█ The next question is whether PERB's decision that San Francisco is the sole employer is supported by substantial evidence. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 617 [224 Cal.Rptr. 631, 715 P.2d 590].) At the hearing the District's director of personnel relations testified, and the District's "Classified Employee Manual; Fiscal Year 1986-87" was placed into evidence.

The personnel director testified as follows: her office is "responsible for both the certificated and the classified employees negotiations." Employees who work at the District are hired by the District through the San Francisco Civil Service Commission. Job descriptions or classifications are created by the civil service system, but after an employee is hired, the District has "the right to assign duties to individuals consistent with those job descriptions." The District evaluates the employees. Disputes between the District and the employees are handled through the civil service grievance system; the parties are the District and the employee. Salaries are set by civil service. The District receives funds from state and local sources. It transmits these funds to the City, and the City issues paychecks to the employees. The District and the Union had engaged in collective bargaining in the past over 50 or 60 proposals including hours, uniforms, institutional police officer demands, cafeteria worker demands, and a new grievance procedure.

The District's employee manual, which is apparently given to each employee at the time of employment, includes the following: the District's chancellor is the chief executive officer and the appointing officer as defined in section 3.501 of the San Francisco Charter. (Classified Employee Manual; Fiscal Year 1986-87, at p. 7.) "The District Office, located at 33 Gough Street, administers fiscal control . . . certificated and classified personnel . . . finance . . . ." (*Id.,* at p. 8.)

Under the heading "Personnel Administration," the manual states that the District's governing board "and" the City's Civil Service Commission "must classify all employees and positions not requiring certification. Such employees and positions are known as the classified service . . . . [¶] Classified personnel responsibilities are administered by our Classified Personnel and Payroll Sections, both located at the District Business Office . . . ." (Classified Employee Manual, *supra,* at p. 9.) Concerning "Assignment of

Duties," the employees are reminded that they have each been assigned a civil service job classification and job description. However, they are also informed as follows: "You may be assigned any duty contained within the specifications. You may also be assigned responsibilities not stated in the specifications. The class specifications outline *examples* of the responsibilities and are not to be considered complete and inclusive. Civil Service Rule 26 authorizes the temporary assignment of any duty in the District for 30 days without an increase in pay." (*Id.*, at p. 10.) The District evaluates probationary employees and decides whether to grant permanent status. The District can dismiss employees. New employees must receive a District personnel form before they can start working. (*Id.*, at p. 11.)

Office hours, coffee breaks, overtime, compensatory time, jury duty, tuberculin skin tests, and pay days are administered through the District. (Classified Employee Manual, *supra*, at pp. 12-15.) Leaves of absence are regulated by civil service rules, but are administered through the District. (*Id.*, at pp. 15-18.) Transfers between the City and the District are jointly administered by the District and the Civil Service Commission. (*Id.*, at p. 18.) Resignation is administered through the District using civil service forms. (*Id.*, at p. 18.) Outside employment is regulated by civil service, but the civil service forms are available at the District's personnel offices. (*Id.*, at p. 18.)

A section entitled "San Francisco Charter" states that Charter Article V, *The Schools*, and Charter Article VIII, *The Rights and Obligations of Officers and Employees*, "along with Article V, Part Seventeen, Civil Service Commission, provide the basic framework for the Civil Service and SFCCD personnel rules and regulations." (Classified Employee Manual, *supra*, at p. 19.) A section entitled "Civil Service Commission Rules" states that any questions about the rules will be answered at "our Classified Personnel Section at our District Business Office." (*Id.*, at p. 20.) Vacations, sick leave, and compensatory time are administered by the District on District forms. Requests for leave are administered by the District with the City forms. (*Id.*, at pp. 20A-23.)

Retirement is administered by the City. A two-week notice of retirement should be given to the District. (Classified Employee Manual, *supra*, at pp. 23-24.) A Medicare tax is paid by the employee and the District. (*Id.*, at p. 24.) State disability insurance appears to be administered through the City. (*Id.*, at p. 25.) Employees are members of a self-administered health service system. "District pays all or most of the cost of the employee's membership in the Health Service System." (*Id.*, at p. 26.) Workers' compensation appears to be administered jointly by the District and the City.

(*Id.*, at pp. 27-28.) Information about unemployment insurance is available at the District offices. (*Id.*, at p. 28.)

Under the heading "Compensation," the manual states that the governing board is empowered to "fix and order paid compensation" by Education Code sections 88160 and 88162. "Additionally, [the District,] by Education Code section 88137, comes under the merit system of the City and County of San Francisco. [¶] [The District's] Governing Board, on June 19, 1986, by Resolution Nos. 860619-S1 and 860619-S2, adopted the Classified Personnel Salary Schedule, 1986-87. These resolutions set forth the administrative provisions, establishes the schedules of compensation, various work schedules, conditions of employment, and methods of compensation." (Classified Employee Manual, *supra,* at p. 31.) The schedules of compensation are set out in the manual. (*Id.*, at pp. 34-46.)

The District independently determines what holidays are taken by the employees. (Classified Employee Manual, *supra,* at pp. 31-33.) The District also pays certain fringe benefits which are not given to the City employees. These benefits include dental insurance, prescription drug insurance, and a $15,000 group-term life insurance policy. (*Id.*, at pp. 28-30.)

This evidence establishes that PERB's decision herein is not supported by substantial evidence. The District hires and fires the employees. It operates through a civil service framework, but it makes the decision whether to hire or fire an individual employee. Similarly, the District is the agency which disciplines employees. Moreover, if employees have grievances they file them against the District. The disputes are handled through a civil service grievance procedure, but the parties are the District—as employer—and the employee. The District determines what each employee does, although it is guided by civil service classifications. Salaries appear to be set by a resolution adopted by the District. Certain fringe benefits are awarded and paid directly by the District, while others are awarded through civil service. But even the latter are, for the most part, administered by the District. In carrying out these functions, the District acts independently through its own offices and officers. It does not act as a department of the City. Overall, the District and City have successfully harmonized and divided their responsibilities over the employees. For the most part, the District acts as the employer, but it utilizes a civil service system. It appears undisputed that the District alone supervises the employees on the job.

Our conclusion that the City and the District are joint employers will not affect the status quo. The Union will continue to bargain with the District

over those matters in which the District exerts authority and control, and with the City over the areas within its purview.

For the reasons set forth above, PERB's decision is annulled and the cause is remanded to PERB for further proceedings consistent with the views expressed herein.

Low, P. J., and King, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 21, 1989.