Filed 11/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COUNTY OF VENTURA,<br><br>    Petitioner,<br><br>v.<br><br>PUBLIC EMPLOYMENT<br>RELATIONS BOARD,<br><br>    Respondent;<br><br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION,<br>LOCAL 721,<br><br>    Real Party in Interest. | B294825<br>(PERB Dec. No. 2600-M)<br>(PERB Case No. LA-CE-655-M) |

Service Employment International Union, Local 721 (SEIU) sought to represent nonphysician employees of satellite medical clinics (Clinics) owned by private corporations but under contract with Ventura County Medical Center (VCMC) to provide medical services. The County of Ventura (the County) refused to process SEIU's petition to represent the employees (Clinic employees) on the ground that private corporations and not the

County were the sole employers. SEIU filed an unfair practice charge with the Public Employment Relations Board (PERB), alleging the County's refusal to process its petition violated the Meyers-Milias-Brown Act (MMBA) (Gov. Code,[1] § 3500 et seq.), which governs employer-employee relations between public agencies and public employees. An administrative law judge (ALJ) found in favor of the County and dismissed the unfair practice charge. PERB reversed the ALJ's decision and found the County is a single employer or, in the alternative, a joint employer of Clinic employees.

The County filed this petition for a writ of extraordinary relief from PERB's decision (§ 3509.5, subds. (a) & (b)). It argues PERB lacked jurisdiction because Clinic employees were private employees, and not County employees. We affirm.

## FACTS

The County, through the Health Care Agency, owns and operates VCMC. VCMC provides a network of ambulatory care clinics, which consist of either specialty care or primary care clinics. The primary care clinics consist of 17 privately-owned Clinics throughout Ventura County. The Clinics provide outpatient services to the underserved patient population and advertise these services as affiliated with VCMC.

Each private corporation has a Professional Services and Operations Agreement (Operations Agreement) with VCMC to provide medical services. Each corporation is owned by a physician, who serves as the Clinic's medical director. The

---

[1] Further unspecified statutory references are to the Government Code.

2

medical director's duties and responsibilities are established through the Operations Agreement.

Each of the Operations Agreements between VCMC and the Clinics are "almost identical." The Operations Agreements state that VCMC is the "licensed operator" of each Clinic. Each Clinic identifies itself as a "clinic of [VCMC]." The Operations Agreements state that Clinic patients are VCMC patients and patient records are VCMC property.

The County provides and maintains the facilities, equipment, and furnishings for the Clinics to operate. The Operations Agreements state the Clinics "shall not do anything in or about" the facilities that would "obstruct or interfere with the rights of" VCMC. The County is permitted to use the facilities for "any purpose," including maintaining licenses and permits, coordinating and reviewing medical records or financial records, administering VCMC programs, and providing services.

### Financial Relationship

The County pays each corporation a monthly administration fee and, in addition, bonuses for achieving certain goals (e.g., meeting certain patient satisfaction survey scores, complying with accreditation requirements, or maintaining an average volume of patient visits that meet Medicare productivity guidelines).

Before each fiscal year, each Clinic negotiates an annual operating budget with the County. The operating budget includes all projected expenses that require the County's reimbursement, including employee payroll projections. The County must approve the operating budget. All expenses are reported to the County in a monthly financial report. The County

determines from these monthly reports when supplemental funding for additional expenses is necessary.

The County owns all revenues and accounts receivable that the Clinics generate. It establishes all fees for services provided and handles billing. After the County collects the revenues from the Clinics, it uses those revenues to cover the Clinics' expenses. If the revenues are insufficient to cover a Clinic's expenses, the County advances funds to cover the remaining expenses. One medical director testified that when requesting advance funds, he must "justify each" request. Each Operations Agreement sets a maximum annual amount of "additional operating capital" that is "necessary to meet [Clinic] operating expenses." If a Clinic's average cash balance exceeds the average monthly operating costs, the County may recoup excess cash by withholding revenue or requiring the Clinic to return funds.

The County pays some expenses directly, including expenses to maintain the facilities, furnishings, medical supplies, and equipment. It also pays for medical malpractice, general liability, and workers' compensation insurance.

### *Clinic Management*

The Operations Agreements state that the private medical corporations "shall manage [Clinic's] day-to-day activities" and provide a "sufficient number of physicians and staff." The corporations have the authority to hire, promote, train, discipline, schedule, and set the compensation of Clinic employees.

VCMC and the Clinics are collectively accredited by the Joint Commission on Accreditation of Healthcare Organizations. VCMC has developed several policies and

4

procedures that track the Joint Commission's standards and ensure compliance with these standards. The Operations Agreements require Clinic employees to comply with the Joint Commission's accreditation standards, VCMC's code of conduct, and over one hundred VCMC policies and procedures.

The County trains Clinic employees on VCMC's policies and procedures, which include patient care procedures, emergency protocol, and administrative procedures. Clinic employees have access to VCMC's policies through a link on their computer desktop. New hires must attend a VCMC orientation session where they are provided a VCMC protocol and procedure handbook and information on other County policies, such as work place harassment and substance abuse policies. Clinic employees are required to follow other VCMC rules such as dress code and cell phone policies.

Clinic employees are required to attend an in-person quality control training session once a year. At these sessions, the County trains Clinic employees on performing day-to-day job duties, such as administrating a urine test, collecting blood samples, and cleaning the machines used for blood samples. Clinic employees are also required to complete online compliance training, including a test at the end of each training session.

The County periodically reviews the work of Clinic employees to ensure compliance with County standards. A County employee will perform "audits" by inspecting a Clinic employee's work space, asking questions regarding various procedures, and requiring the employee to demonstrate their ability to perform certain tasks. Clinic employees can be disciplined if they do not follow VCMC policies and procedures. If the County believes a Clinic employee's work is deficient, the

County will bring the issue to the attention of the medical director.

Clinic employees are required to obtain and wear a badge which identifies them as being "affiliated with VCMC." They are required to use the VCMC hospital forms for patients, the County's in-house mail and e-mail system, and the County's information technology (IT) systems for patient services.

The County requires Clinic employees to perform many clerical and administrative tasks. The County requires Clinic employees to produce reports on payroll, monthly data (on patient visits, clinic procedures, and gross revenue), monthly physician time studies for Medicare, monthly financial/account statements, and other reports. Upon request, Clinic employees must perform "any other tasks as required for operation of" the Clinics.

Under the Operations Agreements, the Clinics are required to cooperate with other Clinics to ensure minimum staffing levels are maintained. When a Clinic employee is transferred from one Clinic to another, the corporations must follow inter-Clinic billing protocols to reimburse that employee's compensation. The Clinics must all participate in a "shared call" system with VCMC hospitals for "physician coverage and inpatient hospital services." Several Clinic employees testified they worked "interchangeably" at various Clinics and VCMC hospitals whenever there was a staffing need.

### Reporting to Federal and State Agencies

The County submitted Medi-Cal provider applications to the State of California on behalf of each Clinic. The County identified itself as the "Legal name of applicant or provider" and identified the Clinics' name as the "Business

6

name." Under the subsection entitled "Subcontractor," the application asks: "Does the applicant/provider contract or delegate any management functions or responsibilities for providing [health care services]?" The County marked "no." The County answered the questions in the application under penalty of perjury.

The County also submitted Medicare Enrollment Applications to the federal government on behalf of each Clinic. The application asks the County to list any "managing organizations," that "conduct[] the day-to-day operations of the provider." The application clarifies that managing organizations "need not have an ownership interest in the provider in order to qualify." The County represents that it has management responsibilities over each Clinic and does not identify any other managing organizations. The application also asks the County to list all "managing employees," which include "general managers, business managers, administrators, directors or other individual who exercises operational or managerial control over . . . the day-to-day operations of the provider." The County listed only a County administrator as a "managing employee."

The County also applied to designate the Clinics as "Federally Qualified Heath Centers" (FQHC), which allows the County to receive a higher reimbursement rate for medical services and apply for federal grant funding. (42 U.S.C. § 254b(e)(1), (5).) Only a public or a nonprofit entity may apply for FQHC designation. (42 U.S.C. § 254b(e)(1)(A).) In the County's FQHC application, the County represents that the Clinics are "integrated into" the County's management structure, and it provides an organizational chart showing the Clinics' integration

7

into the County's healthcare system (as part of VCMC's Ambulatory Care Clinics).

## PROCEDURAL HISTORY

SEIU filed with the County a petition for recognition of its representation as a bargaining unit of Clinic employees. The County refused to process the petition on the grounds that it was not the "employer, joint or otherwise, of the persons SEIU purports to represent." SEIU subsequently filed an unfair practice charge with PERB.

General Counsel for PERB filed a complaint, alleging the County violated the MMBA (§§ 3502, 3506, 3507, subd. (c), 3507.1, subd. (c)) when it refused to process SEIU's petition. Following a hearing, the ALJ issued a proposed decision, finding that PERB lacked jurisdiction over the matter because the County was neither a single-employer nor a joint-employer. The ALJ dismissed the unfair practice charge.

SEIU filed with PERB a statement of exceptions to the ALJ's proposed decision. SEIU argued the ALJ erred when it determined the County was not an employer of Clinic employees. In a two-to-one decision, the PERB panel reversed the ALJ's proposed decision. The majority found that SEIU "met its burden under the single employer doctrine and, alternatively, under the joint employer doctrine." PERB ordered the County to process SEIU's petition to represent Clinic employees.

The County filed this petition for a writ of extraordinary relief from PERB's decision pursuant to section 3509.5, subdivisions (a) & (b), which allows "any charging party . . . aggrieved by a final decision . . . [of PERB] in an unfair practice case" to file a petition for a writ of extraordinary relief

8

"in the district court of appeal having jurisdiction over the county where the events giving rise to the decision or order occurred."

## DISCUSSION

Under the MMBA, "public employees shall have the right to form, join, and participate in the activities of employee organizations . . . for the purpose of representation on all matters of employer-employee relations." (§ 3502.) "No public agency shall unreasonably withhold recognition of employee organizations," and must "grant exclusive or majority recognition to an employee organization" based on a showing that a majority of the employees desire representation. (§§ 3507, subd. (c), 3507.1, subd. (c).) The MMBA defines a "'public employee'" as "any person employed by any public agency." (§ 3501, subd. (d).) A "'public agency'" includes "every town, city, county, city and county[,] and municipal corporation." (§ 3501, subd. (c).)

Here, the County does not dispute it is a public agency under the MMBA (§ 3501, subd. (c)). However, it contends that PERB has no jurisdiction because the County is not an employer within the meaning of the MMBA (§ 3501, subd. (d)). We disagree.

### *Standard of Review*

"A complaint alleging a violation of [the MMBA] . . . shall be processed as an unfair practice charge by [PERB]." (§ 3509, subd. (b); PERB Regulation No. 32603, subd. (g).) PERB has the "exclusive jurisdiction" to initially adjudicate an unfair practice charge under the MMBA. (§§ 3509, subd. (b), 3541.3; *Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 911 (*Boling*).) PERB is ""'presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness

9

which courts do not possess and therefore must respect." [Citation.]' [Citation.]" (*Boling*, at p. 911.)

We defer to PERB's legal determinations unless they are "'clearly erroneous.'" (*Boling, supra*, 5 Cal.5th at p. 912.) We review PERB's factual findings for substantial evidence. (*Ibid.*; § 3509.5, subd. (b).) We ""'do not reweigh the evidence. If there is a plausible basis for [PERB]'s factual decisions, we are not concerned that contrary findings may seem to us equally reasonable, or even more so. [Citations.]"'" (*Boling*, at p. 912.)

### *Joint-employer Doctrine*

The County contends PERB erred when it determined the County was a joint employer of Clinic employees. We disagree.

A joint-employer relationship exists when "'two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.'" (*United Public Employees v. Public Employment Relations Bd.* (1989) 213 Cal.App.3d 1119, 1128, adopting the federal test in *NLRB v. Browning-Ferris Industries, Inc.* (3d Cir. 1982) 691 F.2d 1117, 1124.) A joint-employer relationship is established if an entity retains the right to "'control both what shall be done and how it shall be done,'" such that it retains the "'right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed.' [Citation.]" (*Service Employees Internat. Union v. County of Los Angeles* (1990) 225 Cal.App.3d 761, 769.) Whether a joint-employer relationship exists is a factual determination that we will uphold if supported by

10

substantial evidence.  (*Poncio v. Department of Resources Recycling & Recovery* (2019) 34 Cal.App.5th 663, 673.)

Substantial evidence supports PERB's finding that the County was a joint-employer of Clinic employees.  The County exercised control over compensation and staffing decisions.  Although the medical directors directly hire Clinic employees and set their salaries, the County has ultimate control over the Clinics' financial resources that pay for compensation and staffing.  Clinic employees' salary and benefits are part of a Clinic's annual operating budget, which must be approved by the County.  The County sets the fees for the medical services provided by the Clinic and owns all revenues and accounts receivable that a Clinic generates.  From that revenue, the County pays the Clinic's operating costs and covers any shortfalls.  The County is also responsible for other financial aspects of the Clinics' operation, such as obtaining grants and paying bonuses and administration fees.

Evidence regarding the "shared call" system with other Clinics and VCMC hospitals show the County exercised its right to control staffing decisions.  The Operations Agreements required the Clinics to share staff as needed with other Clinics and VCMC hospitals to ensure minimal staffing levels are maintained.  The Operations Agreements provided a protocol for reimbursement of employee compensation when an employee is transferred from one Clinic to another.  Several Clinic employees testified they were required to work "interchangeably" in other Clinics and VCMC hospitals whenever needed.

The County had a right to control patient care and personnel policies, training, and other conditions of employment. The Operations Agreements required Clinic employees to comply

11

with VCMC's policies and procedures and code of conduct. Clinic employees were required to attend VCMC trainings when hired and throughout the course of their employment. VCMC policies, rules, and training requirements govern the manner and method in which an employee must perform day-to-day patient care procedures and administrative tasks. Other rules relating to employee conduct, work place harassment, and dress codes affect the conditions of their employment. Clinic employees can be disciplined if they do not follow these policies or rules.

The evidence shows the County enforces its work performance standards. The County performs in-person quality control training sessions, online compliance training sessions, and audits. The County also enforces its minimum quality standards by bringing deficient work to the attention of the medical directors.

The County controls other terms and conditions of employment. Clinic employees are required to wear a badge that identifies them as affiliated with VCMC; use VCMC mail, e-mail, and IT systems; and perform various administrative tasks on behalf of the County. The County provides the facilities and equipment the employees use in performing their day-to-day tasks, but places restrictions on the use of the facilities by Clinic employees and provides that the County may use the facilities for any purpose.

Finally, the sworn statements on various federal and state application forms show the County retains a right to control Clinic operations. In its Medi-Cal and Medicare applications, the County reports that it has management responsibilities over Clinic operations. Organizational charts submitted in the

County's FQHC application show that the Clinics are "integrated into" the County's "management structure."

In sum, substantial evidence supports the County retained the right to control the "'manner and method in which [Clinic employees'] work is performed.' [Citation.]" (*Service Employees Internat. Union v. County of Los Angeles*, *supra*, 225 Cal.App.3d at p. 769.) PERB did not err when it found the County was a joint-employer.[2]

**DISPOSITION**

The Public Employment Relations Board decision is affirmed. Respondent and real party in interest are awarded costs.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

---

[2] Because we conclude PERB properly found the County was an employer under the joint-employer doctrine, we need not decide whether the single-employer doctrine applies.

13

Public Employment Relations Board

_____

Leroy Smith, County Counsel, Matthew A. Smith, Assistant County Counsel, for Petitioner.

J. Felix de la Torre, General Counsel, Wendi L. Ross, Deputy General Counsel, Daniel Trump and Joseph W. Eckhart, Senior Regional Attorneys, for Respondent.

Weinberg, Roger & Rosenfeld, Monica T. Guizar and Christina L. Adams, for Real Party in Interest.