685 So.2d 676 (1996)
Lonnie B. BUTLER, et al., Plaintiffs-Appellants,
v.
FIDELITY TECHNOLOGIES CORPORATION, Defendant-Appellee.
No. 96-821.
Court of Appeal of Louisiana, Third Circuit.
December 26, 1996.
*677 Robert Joseph Tete, Lake Charles, for Lonnie B. Butler.
James Robinson Madison, Shreveport, for Fidelity Technologies Corp.
Before THIBODEAUX, PETERS, and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiffs, former employees of the defendant, Fidelity Technologies Corporation, appeal the trial court's judgment sustaining Fidelity's exception of lack of subject matter jurisdiction. For the following reasons, we reverse and remand this matter to the trial court for further proceedings.

FACTS
On March 1, 1991, Fidelity entered into a contract with the Seventh Signal Command of the United States Army to provide operation and maintenance services for the administrative telephone system at Ft. Polk, Louisiana. Because the subject matter of the contract is the provision of services to the Federal Government, it is governed by the mandates of the Service Contract Labor Standards Act (SCA), 41 U.S.C. § 351, which ensures that service employees working on government contracts are paid the prevailing wages paid in the locality by non-governmental contractors. The wage and benefit determinations are made by the Department of Labor under the direction of the Secretary of Labor by surveying the wages for similar jobs in the locality. Fidelity provided the operation and maintenance services from April 1, 1991 until November 4, 1992, when Fidelity novated the contract to Dynamic Concepts, Incorporated (DCI), who then succeeded to all of Fidelity's duties and responsibilities under the contract.
At the time of the novation, the plaintiffs were employees of Fidelity. On November 4, 1992, the date DCI assumed all of Fidelity's responsibilities, they became employees of DCI and on November 5, 1994, they were promptly discharged. At this time, the plaintiffs had accrued unused vacation days and they made timely demand to be paid all wages and benefits due. However, a dispute arose over whom, Fidelity or DCI, was responsible for payment of this vacation time. Fidelity and DCI were unable to negotiate a resolution to this dispute and thereafter submitted their dispute to the United States Department of Labor, Wage and Hour Division, for resolution as required by the SCA. On January 6, 1993, the plaintiffs requested intervention by the Department of Labor in this dispute. The plaintiffs allege that they never received a response to this request.
On December 4, 1994, the plaintiffs instituted the present litigation against Fidelity pursuant to La.R.S 23:631 and 632. La.R.S. 23:631 provides that upon discharge, the employer has the duty to pay the employee the amount of the wages due under the terms of employment within three days of the discharge. Failure to pay or tender payment subjects the employer to liability in the amount of either ninety days wages at the employee's daily rate or full wages from the time of demand until the employer pays or tenders payment, whichever is the lesser amount. La.R.S. 23:632. In addition, reasonable attorney fees are available to the employee in the event it is necessary to file suit to collect the unpaid wages. Id.
*678 On March 14, 1995, Fidelity filed an exception to subject matter jurisdiction alleging that because the contract between it and the Seventh Signal Command incorporated the SCA, state law is preempted and the exclusive remedy available to the plaintiffs is administrative relief through the United States Department of Labor. The hearing on this motion was held on February 23, 1996, wherein the trial court sustained the exception finding that the SCA preempted state law.

ASSIGNMENT OF ERROR
The plaintiffs have appealed alleging that the trial court erred in holding that the Service Contract Act of 1965 preempts a state law claim arising out of an employer's failure to pay its employees all amounts due within seventy-two hours of termination.

PREEMPTION
The United States Supreme Court clearly set forth the standard for federal preemption under the Supremacy Clause of the United States Constitution in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992):
Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Thus, since our decision in M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of preemption analysis.
Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.'"
(citations omitted).
"Preemption is not to be presumed lightly. In fact, there is typically a presumption weighing against preemption to insure that neither the Congress nor the courts unintentionally or unnecessarily disturb the federal-state balance." Huntleigh Corp. v. Louisiana State Board of Private Security Examiners, 906 F.Supp. 357, 360 (M.D.La. 1995). The historic police powers of the states are not to be superseded by federal act unless it is the clear and manifest purpose of Congress. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). To determine whether a state statute is preempted by federal statute, the court must first determine the construction of the two statutes and then resolve the question of whether the state statute interferes with the accomplishment and execution of the full purposes and objectives of Congress. Tenneco, Inc. v. Sutton, 530 F.Supp. 411 (M.D.La.1981). "Thus, where a state and the Congress enact similar legislation, the Court must review the history and purpose of the federal regulation to determine whether the Congress intended to pre-empt the state legislation and regulate the area in question." Id. at 433, 434.

DISCUSSION
Fidelity argues that the courts do not have jurisdiction over this action because the plaintiffs' exclusive remedy for non-payment is the administrative remedy provided by the SCA and the regulations enacted pursuant to that Act. We disagree. The SCA does not explicitly nor implicitly address the issue of nonpayment. The Revision Notes and Legislative Reports of the SCA provides that "[t]he purpose of this bill is to provide labor standards for the protection of employees of contractors and subcontractors furnishing services to or performing maintenance service for Federal Agencies." From a reading of the SCA and the historical notes, one finds that the main thrust of the act is to ensure that employees of contractors or subcontractors *679 furnishing services for Federal Agencies are paid no less than the prevailing rate in the locality, including fringe benefits, and that the work will not be performed under unsafe or unsanitary conditions.[1] If the employer fails to provide such, the Federal Agency may withhold payment under the contract; sue to recover underpayments; cancel the contract; and prohibit the offending firm from receiving further contracts with the Federal Agency for up to three years.[2]
*680 In their complaint, the plaintiffs do not allege that the employment contract with Fidelity fails to comply with the wage and benefit requirements of the SCA. What they do allege, however, is that they were not paid these benefits and they sought recourse under La.R.S. 23:631 and 632.
The purpose of La.R.S. 23:631 and 632 is to compel the employer to pay the earned wages of an employee promptly after his dismissal or resignation. In contrast, the SCA's purpose and objective is to ensure that federal service contract employees are treated equally with employees in that locality by requiring the contractor to pay the prevailing wage and benefits. La.R.S. 23:631 and 632 do not prevent or interfere with the attainment of these federal goals. In fact, 23:631 and 632 help to effectuate the SCA. Depriving Louisiana employees of this remedy would be inconsistent with the objectives of the SCA when the SCA seeks to ensure that these same employees are guaranteed the same benefits as other employees in the same locality and state. As such we find that the SCA does not preempt La.R.S. 23:631 and 632 and reverse the judgment of the trial court.

CONCLUSION
The judgment of the trial court sustaining Fidelity Technologies Corporation's Declinatory Exception of Lack of Subject Matter Jurisdiction is reversed and this matter is remanded to the trial court for further proceedings. The costs of this appeal are assessed *681 against Fidelity Technologies Corporation.
REVERSED AND REMANDED.
NOTES
[1] § 351. Required contract provisions; minimum wages

(a) Every contract (and any bid specification therefor) entered into by the United States or the District of Columbia in excess of $2,500, except as provided in section 356 of this title, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain the following:
(1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality, or, where a collective-bargaining agreement covers any such service employees, in accordance with the rates for such employees provided for in such agreement, including prospective wage increases provided for in such agreement as a result of arm'slength negotiations. In no case shall such wages be lower than the minimum specified in subsection (b) of this section.
(2) A provision specifying the fringe benefits to be furnished the various classes of service employees, engaged in the performance of the contract or any subcontract thereunder, as determined by the Secretary or his authorized representative to be prevailing for such employees in the locality, or, where a collective-bargaining agreement covers any such service employees, to be provided for in such agreement, including prospective fringe benefit increases provided for in such agreement as a result of arm's-length negotiations. Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor. The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary.
(3) A provision that no part of the services covered by this chapter will be performed in buildings or surroundings or under working conditions, provided by or under the control or supervision of the contractor or any subcontractor, which are unsanitary or hazardous or dangerous to the health or safety of service employees engaged to furnish the services. 41 USCA § 351 (1996).
[2] 41 USCA §§ 352354 (1996) provide the following:

§ 352. Violations
(a) Liability of responsible party; withholding payments due on contract; payment of underpaid employees from withheld payments
Any violation of any of the contract stipulations required by section 351(a)(1) or (2) or of section 351(b) of this title shall render the party responsible therefor liable for a sum equal to the amount of any deductions, rebates, refunds, or underpayment of compensation due to any employee engaged in the performance of such contract. So much of the accrued payment due on the contract or any other contract between the same contractor and the Federal Government may be withheld as is necessary to pay such employees. Such withheld sums shall be held in a deposit fund. On order of the Secretary, any compensation which the head of the Federal agency or the Secretary has found to be due pursuant to this chapter shall be paid directly to the underpaid employees from any accrued payments withheld under this chapter.
(b) Enforcement of section
In accordance with regulations prescribed pursuant to section 353 of this title, the Federal agency head or the Secretary is hereby authorized to carry out the provisions of this section.
(c) Cancellation of contract; contracts for completion of original contract; liability of original contractor for additional cost
In addition, when a violation is found of any contract stipulation, the contract is subject upon written notice to cancellation by the contracting agency. Whereupon, the United States may enter into other contracts or arrangements for the completion of the original contract, charging any additional cost to the original contractor. § 353. Law governing authority of Secretary
(a) Enforcement of chapter
Sections 38 and 39 of this title shall govern the Secretary's authority to enforce this chapter, make rules, regulations, issue orders, hold hearings, and make decisions based upon findings of fact, and take other appropriate action hereunder.
(b) Limitations and regulations allowing variations, tolerances, and exemptions
The Secretary may provide such reasonable limitations and may make such rules and regulations allowing reasonable variations, tolerances, and exemptions to and from any or all provisions of this chapter (other than section 358 of this title), but only in special circumstances where he determines that such limitation, variation, tolerance, or exemption is necessary and proper in the public interest or to avoid the serious impairment of government business, and is in accord with the remedial purpose of this chapter to protect prevailing labor standards.
(c) Predecessor contracts; employees wages and fringe benefits
No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm'slength negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.
(d) Duration of contract
Subject to limitations in annual appropriation Acts but notwithstanding any other provision of law, contracts to which this chapter applies may, if authorized by the Secretary, be for any term of years not exceeding five, if each such contract provides for the periodic adjustment of wages and fringe benefits pursuant to future determinations, issued in the manner prescribed in section 351 of this title no less often than once every two years during the term of the contract, covering the various classes of service employees.
§ 354. List of violators; prohibition of contract award to firms appearing on list; actions to recover underpayments; payment of sums recovered
(a) The Comptroller General is directed to distribute a list to all agencies of the Government giving the names of persons or firms that the Federal agencies or the Secretary have found to have violated this chapter. Unless the Secretary otherwise recommends because of unusual circumstances, no contract of the United States shall be awarded to the persons or firms appearing on this list or to any firm, corporation, partnership, or association in which such persons or firms have a substantial interest until three years have elapsed from the date of publication of the list containing the name of such persons or firms. Where the Secretary does not otherwise recommend because of unusual circumstances, he shall, not later than ninety days after a hearing examiner has made a finding of a violation of this chapter, forward to the Comptroller General the name of the individual or firm found to have violated the provisions of this chapter.
(b) If the accrued payments withheld under the terms of the contract are insufficient to reimburse all service employees with respect to whom there has been a failure to pay the compensation required pursuant to this chapter, the United States may bring action against the contractor, subcontractor, or any sureties in any court of competent jurisdiction to recover the remaining amount of underpayments. Any sums thus recovered by the United States shall be held in the deposit fund and shall be paid, on order of the Secretary, directly to the underpaid employee or employees. Any sum not paid to an employee because of inability to do so within three years shall be covered into the Treasury of the United States as miscellaneous receipts.