147 P.3d 588 (2006)
DEPARTMENT OF LABOR AND INDUSTRIES, Respondent,
v.
LANIER BRUGH, a foreign corporation; Skyline Mail Carriers, Inc., a foreign corporation, Appellants, and
Dill's Star Route, Inc., a foreign Corporation, Defendant.
Nos. 56192-8-I, 56821-3-I.
Court of Appeals of Washington, Division 1.
August 21, 2006.
Publication Ordered and Reconsideration Denied November 22, 2006.
*589 Amanda J. Goss, Attorney General Office, Seattle, WA, for Respondent.
Philip Albert Talmadge, Talmadge Law Group PLLC, Tukwila, WA, for Appellants.
GROSSE, J.
¶ 1 The question of whether federal law preempts state law is governed by the intent of Congress. Congressional intent to preempt state law may be found in three ways. First, Congress may express a clear intent to preempt state law. Second, the scheme of federal regulation may be sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation. Third, preemption will be found when there is an actual conflict between federal and state law where (1) compliance with both the federal and state law is physically impossible, or (2) the state law is an obstacle to the full purposes and objectives of Congress. None of these ways are present in the case before us. The decision of the trial court is affirmed.

FACTS
¶ 2 Skyline Mail Carriers, Inc. (Skyline) and Lanier Brugh (collectively the employers) are private employers who contracted to transport mail for the United States Postal Service (USPS) between regional mail centers.[1] In performing the contracts, the employer's truck driver employees work over 40 hours a week within Washington's boundaries. *590 Although the employers pay a straight wage, they do not pay these employees overtime pay for the hours over 40 per week. There is no dispute that the contract between the employers and USPS for mail hauling is governed by the Service Contract Act.[2] The SCA directs the United States Department of Labor to determine a minimum hourly wage for the work expected to be performed for each occupation under the contract.
¶ 3 The contract between the employers and USPS is extensive. The contract does not provide that the federal law is exclusive or expressly prohibit the application of state overtime laws. The contract does not specifically restrict the employers to a certain amount of wages to be paid to their truck drivers, so long as they pay at least the minimum hourly wage rate as determined by the Department of Labor. Under the contract, the employers are not relieved from an obligation to comply with local laws while performing work, rather, the contract requires them to comply with local law. The contract states in section H.12, the PERMITS AND RESPONSIBILITIES (Services) section:
The supplier is responsible, without additional expense to the Postal Service, for obtaining any necessary licenses and permits, and for complying with any applicable federal, state, and municipal laws, codes, and regulations in connection with the performance of the contract.
Further, the contract sets forth in section H.32(d)(1) that "[n]othing in this provision relieves the suppleir [sic] or any subcontractor of any other obligation under law or contract for the payment of a higher wage to any employee."
¶ 4 L & I determined that the employers must pay their drivers overtime for work over 40 hours a week within the state. One of the employers contacted a USPS contracting officer in Seattle, regarding a potential claim for increased compensation under the contract, or for an opinion as to whether the employers must pay overtime. Raymond K. Luke, a contracting officer with USPS, opined that under the SCA and the contract no overtime pay was required, but also noted in a letter to Skyline that
[n]otwithstanding this understanding of the statutory situation, [ (Luke's opinion that no overtime need be paid under the contract)], the Postal Service does not believe that it is in a position to opine authoritatively on the matter by means of a final decision. Washington State is entitled to its interpretation of its statute, and enforces that understanding by appropriate means. While the Postal Service may, at some appropriate stage, undertake to protect its interest, such intervention does not currently seem to be required. This is the case because nothing in the terms of your contract requires that you schedule or employ drivers so as to cause them to accrue service in excess of 40 hours per week.
The employers did not pay overtime because they believed they were not required to do so under the contract or under the opinion received from USPS. One of the employers also possessed a 1994 letter from a bureaucrat with the Department of Labor concerning the payment of overtime, although this letter was never before the trial court.[3]
¶ 5 L & I sued Skyline and Lanier Brugh alleging they failed to comply with the Washington State's Minimum Wage Act (MWA). Defendants Skyline and Lanier Brugh removed the case from superior court to federal court, arguing that the wage claims are preempted by the Service Contract Act (SCA).[4]
*591 ¶ 6 The federal court remanded the case back to superior court for a determination on the merits of the preemption defense. In denying removal from state court, the decision from the Federal District Court set forth that there is no complete preemption, and further stated that "there is no reason to suspect that Congress intended to occupy the entire regulatory field regarding wages and benefits provided to federally-contracted employees." The court indicated that the SCA "was created to provide wage and benefit protections to federally-contracted employees."
¶ 7 Once returned to King County Superior Court, L & I moved for summary judgment on the issues of liability. In a cross-motion for summary judgment the employers raised the defense of federal preemption. The trial court held that the federal law does not preempt the application of Washington's overtime law and granted L & I's motion, while denying that of the employers. This resolved the initial issue of liability. The employers moved unsuccessfully for discretionary review. The issue of the amount of overtime due to the truck drivers was resolved by the parties without further litigation. Following entry of judgments against both employers, they appeal the liability issue, arguing federal preemption.

ANALYSIS
¶ 8 The primary issue presented in this case is whether the passive regulation of wages and hours worked in the federal Service Contract Act (SCA)[5] preempts the overtime wage provisions of Washington's Minimum Wage Act (MWA).[6]
¶ 9 Federal preemption is a defense that may be asserted in actions filed in state court.[7] Whether federal law preempts state law is governed by the intent of Congress.[8] As noted in Department of Labor & Indus. v. Common Carriers, Inc.,[9]
Congressional intent to preempt state law may be found in three ways. First, Congress may express a clear intent to preempt state law. E.g., Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Second, the "scheme of federal regulation [may be] sufficiently comprehensive to make reasonable the inference that Congress `left no room' for supplementary state regulation." [California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1977) ] (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Third, preemption will be found when there is an actual conflict between federal and state law where (1) compliance with both the federal and state law is physically impossible, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or (2) the state law is an "obstacle" to the "full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); see also Guerra, at 281 [107 S.Ct. 683].[[10]]
¶ 10 In Washington, there is a strong presumption against finding preemption and state laws are not superseded by federal law unless it can be determined it is the clear and manifest purpose of Congress.[11] Thus, the goal in preemption analysis is to determine Congressional intent.[12]
*592 ¶ 11 The employers concede there is no express preemption of overtime payment under this chapter or other federal statutes. Thus, for preemption to apply it must be found that the federal statutes so thoroughly occupy the legislative field so to make clear that Congress intended to preclude application of state law, or that there is an actual conflict between the federal laws and the state law.
¶ 12 The issue of whether federal law occupies the field such that state law is preempted by a federal act is a question of statutory construction.[13] We review the question by looking to the federal scheme to determine if it is sufficiently comprehensive to make the inference that Congress "`left no room'" for supplementary state regulation.[14] This implied preemption is found only when the federal statute so thoroughly occupies the legislative field as to make clear the preclusion of state law. The employers claim that because the SCA and the contract are silent regarding overtime pay, no overtime is contemplated. They argue that any regulation would have to come from the Fair Labor Standards Act of 1938 (FLSA). But the silence cannot overcome the presumption against preemption. Occupation of a field is shown by what is present, not what is absent. The contract itself shows that USPS contemplates overtime in at least some of its contracts. It certainly does not preclude the payment of overtime. It is true that the contract has no monetary figures in the "[o]vertime" line, but that fact does not show an intent to preclude the payment of overtime.
¶ 13 The SCA establishes minimum wages for employees of private companies who work with the federal government. The statute requires contractors to pay their employees at least a prevailing minimum rate.[15] Contrary to the argument of the employers, nowhere in the SCA does it purport to completely occupy the field of regulation. The principal purpose of the SCA is to establish minimum wage and fringe benefit standards and to require contractors to pay their employees, who work on a federal service contract, in accordance with the prevailing rates and benefits for such employees in the locality.[16] In Berry v. Andrews, an employee brought an action for wrongful discharge and retaliation under the FLSA, even though the employer was subject to the SCA, which does not provide for such an action. The action was permitted to continue even though relief was not available under the SCA.
¶ 14 Similarly, in Common Carriers, the Washington Supreme Court determined the federal statute did not preempt application of the Minimum Wage Act (MWA) despite the fact that the federal law was silent on the issue of extra pay for overtime hours.[17] The applicable federal statute in the Common Carriers case was the Motor Carrier Act (MCA).[18] There, the United States Secretary of Transportation had the statutory duty to regulate the number of hours worked by the drivers and regulated by rule the number of hours worked.[19] The rule was silent on the issue of payment for overtime hours. The Washington Supreme Court concluded that "Congress has not expressed a clear intent to preempt state overtime wage regulation."[20] Thus, the provision for overtime *593 in the FLSA did not apply to the truck drivers employed by Common Carriers, and there was room to apply the state's MWA overtime pay protections to those drivers.
¶ 15 We hold that in the instant case the same is true. The FLSA's overtime pay provisions do not apply to the employers' intrastate truck drivers, and there is room to apply the MWA. The SCA builds on the on the FLSA when the FLSA establishes that all wages paid must satisfy the minimum amount of wages established. If Congress intended the federal law to occupy the entire field of regulation here, it would not have left room for the application of local law.
¶ 16 The employers attempt to distinguish the Common Carriers case by arguing that the SCA, unlike the MCA, occupies the entire field because it regulated minimum wages and does not provide for a premium for overtime hours. But there has been no showing of Congressional intent beyond the establishment of federal minimums.[21] In the Diaz case, the federal court discussed whether the SCA preempted the application of Puerto Rico's law to recover employment benefits. The Diaz court held that federal law did not completely intend to occupy the entire field in enacting the SCA.
¶ 17 Here, the SCA's protection for employees to receive a minimum wage is served when the employees receive the protections of both state and federal laws. As stated in Diaz, "[t]he only reasonable inference to be drawn from the SCA is that local and state laws were to provide the foundation upon which the SCA was to be built, to insure that contract employees received certain minimum benefits."[22]
¶ 18 Further, the contract at issue makes references throughout requiring the employers to comply with state and local laws regarding other issues such as, permit requirements, insurance requirements, safety regulations and driving rules. The language of the contract can be fairly read to mean that the wages are a floor upon which state laws can build. For instance, the contract provides that "[n]othing in this provision relieves the suppleir [sic] or any subcontractor of any other obligation under law or contract for the payment of a higher wage to any employee."
¶ 19 The employers also assert that only if there was an intent to apply any overtime law would there be an implied permission to apply state overtime law. But the absence of federal overtime law under the SCA, and the lack of an intention to apply FLSA overtime laws do not preclude the payment of overtime, it just shows that it does not specifically require it.
¶ 20 Next, the employers also claim that an actual conflict exists between the federal and state law if both the SCA and Washington's MWA are applied. But this can be shown only if application of the Washington MWA creates an obstacle to the accomplishment and execution of the purposes and objectives of Congress.
¶ 21 Here, to apply both Acts, the employer pays its employees at least the wage determined by the United States Department of Labor as listed in the contract. Then, if an employer chooses to require its employees to work more than 40 hours in Washington, under the state MWA the employer would pay the employees time and a half for each overtime hour worked. Applying Washington's MWA does not create an obstacle to the goals of the SCA or the Postal Reorganization Act (PRA). The state and federal wage laws operate concurrently to protect workers. These Acts address the need to protect minimum employment conditions for specific circumstances and vary only as to coverage. There is no conflict.
¶ 22 The employers also claim that federal preemption applies because the federal laws regulate a core federal function, the postal service. But applying state overtime pay laws would not compromise the delivery of mail. The state law regarding overtime does not regulate the number of hours an employee *594 may work, regulate when they work, or regulate the days they work. It merely addresses those times when an employer requires its employees to work more than 40 hours in a week within the state. The state MWA requires that those employees must be paid a premium or bonus for the extra hours worked. Here, the employers merely speculate that application of the state's MWA would conflict with federal policy. But mere speculation without other proof that application of a state statute interferes with the purpose of a federal statute is insufficient, by itself, to support federal preemption of the state statute.[23] The employers have failed to demonstrate that the overtime provisions of the MWA interfere with the goals of the SCA or the PRA. Even a vesting of federal authority in the United States Secretary of Labor does not control an issue of concurrent jurisdiction.
¶ 23 Again, we find that the reasoning of Common Carriers is applicable. That court was interpreting concurrent application of safety purposes under the federal MCA with the overtime provisions of the state MWA, and not the provisions of the SCA. Here, there is no necessary inconsistency between providing the minimum wage rate as set forth under the SCA/contract with providing for increased rates of pay for overtime in the MWA.
¶ 24 The cases cited by the employers are easily distinguished. This is not a case affecting the construction of USPS facilities, it will not affect whether mail carriers can walk on someone's front lawn. While application could incidentally affect the transporting of the mail within Washington because the employers may choose to change the schedules of truck drivers or necessarily need to hire additional drivers, the MWA does not impose further qualifications on federal employees or prevent USPS from performing postal functions or comply with contractual obligations. It requires that if a driver within the state has to work more than 40 hours a week, the employer must pay overtime.
¶ 25 Even the letter from a USPS inspector, which was offered and provided to the trial court below, indicates that there is nothing in the contract between the employers and USPS that mandates that the employer require its employees to work more than 40 hours a week.
¶ 26 In addition, although it deals with the FLSA and general admiralty laws, the case of Pacific Merchant Shipping Assoc. v. Aubry,[24] is instructional. In Pacific Merchant, employers in a California admiralty case argued that allowing states to enforce overtime pay provisions against maritime employers would produce a "crazy-quilt patter of regulation." But the court held that neither the FLSA nor general admiralty laws preempted application of California overtime laws to maritime workers. Even though the seamen in Pacific Merchant were expressly exempt from the FLSA's overtime pay requirements, the court held that California could provide greater protections to workers by requiring overtime pay.[25] The court emphasized there was no evidence of Congressional intent to prohibit the state from applying its overtime laws to seamen. The same is true in this case.
¶ 27 While true that some of the truck drivers may spend time driving in neighboring states, the issue here pertains to drivers who have worked more than 40 hours a week within the state. In sum, the federal statutes at issue provide a floor, not a ceiling, in protecting the workers. There is no evidence or compelling reason suggesting that requiring overtime pay for work within the state creates a conflict with the federal law.
¶ 28 As such the decision of the trial court should be affirmed.
Attorney Fees
¶ 29 L & I claims it is entitled to attorney fees under RCW 49.48.030. The statute provides *595 for attorney fees in any successful action to recover wages due. Further, the trial court applied this statute to grant fees below and the employers did not challenge application of that statute at trial. Attorney fees are awarded.
Motion to Strike
¶ 30 L & I seeks to strike footnote 2, at page 5 of the reply brief and the supporting document attached in the appendix. These documents indicate that the United States Department of Labor advised postal contractors they were not obligated to pay overtime. The letter is dated December 9, 1994. Neither the letter nor the attachment is contained in the record before the trial court. The footnote is an impermissible attempt to present new evidence in violation of RAP 9.1 and 9.12.
¶ 31 Skyline and Lanier Brugh argue that this court may take judicial notice on appeal of official documents prepared by governmental agencies.[26] Further, the employers request that even if this court grants the motion to strike, the court should make the document part of the record on review pursuant to RAP 9.11. That rule provides that additional evidence may be taken before a decision in a case on review, if (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party for post-judgment motions in the trial court is inadequate or expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.
¶ 32 Judicial notice is not appropriate here. ER 201 does not provide for unlimited judicial notice. The documents do not meet the requirements of ER 201. This is especially true considering the fact that the 1994 letter does not purport to take an official position of USPS or the United States Department of Labor, and after looking at the 2001 letter offered by the employers on summary judgment from a USPS contracting officer. As noted above, this letter opines that while the officer's view of the statute is that no overtime need be paid under the contract, the officer recognizes that the state might interpret the situation differently, especially while attempting to enforce state law. Further, even that officer indicated that no formal opinion was necessary because the employers were not compelled to require their employees to work over 40 hours a week under the contract.
¶ 33 Further, RAP 9.11 does not authorize the supplementation of the trial court record on the facts. In order to supplement the record at this late date, RAP 9.11(a) requires the employers to satisfy the six elements to prove that the evidence is necessary to resolve the case. The employers cannot satisfy each of the requirements. This is true in at least two respects. First, the central issue of the case is whether federal law preempts application of the MWA. The focus for evaluating whether preemption exists is the intent of Congress. The letter and attachment at issue is not a federal law or regulation, or even a formal interpretation. Secondly, the employers have not provided a legitimate excuse for not discovering the letter and document before trial.
¶ 34 The decision of the trial court is affirmed. Attorney fees are awarded to the Department of Labor and Industries. The motion to strike footnote 2 and the accompanying appendix is granted.
WE CONCUR: COX and COLEMAN, JJ.
NOTES
[1] The Department of Labor and Industries (L & I) brought the action against three private employers, but the third employer, Dill's Star Route, Inc. is not a part of the appeal. This case is about overtime payments for truck driver employees of employers who have mail haul contracts with USPS for time spent within the state, thus intrastate, not interstate.
[2] 41 U.S.C. § 351-358
[3] The reply brief of the employers contains a footnote with an appendix setting forth a December 1994 letter from the United States Department of Labor to one of the employers, which included a "fact sheet" providing general information regarding the application of the SCA to individuals awarded mail haul contracts with USPS. That letter indicates that service employees engaged in mail haul route delivery on USPS contracts are exempt from paying overtime for hours worked in excess of 40. The letter and fact sheet were not before the trial court. The letter and fact sheet are the subject of a motion to strike before this court.
[4] 41 U.S.C. §§ 351-358.
[5] 41 U.S.C. §§ 351-358.
[6] Chapter 49.46 RCW.
[7] Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 16, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).
[8] California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987).
[9] Common Carriers, Inc., 111 Wash.2d 586, 588, 762 P.2d 348 (1988).
[10] See also, Stevedoring Servs. v. Eggert, 129 Wash.2d 17, 23, 914 P.2d 737 (1996); PAWS v. University of Wash., 125 Wash.2d 243, 265, 884 P.2d 592 (1994).
[11] Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 327, 858 P.2d 1054 (1993).
[12] This is due to the unavoidable consequence of the supremacy which the constitution has declared. If it is clear that Congress has intended to preempt the states in the area at issue, then the "States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." McCulloch v. State of Maryland, 17 U.S. 316, 436, 4 Wheat. 316, 4 L.Ed. 579 (1819).
[13] Stevedoring Servs., 129 Wash.2d at 27, 914 P.2d 737 (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)).
[14] Common Carriers, 111 Wash.2d at 588, 762 P.2d 348 (quoting Guerra, 479 U.S. at 281, 107 S.Ct. 683).
[15] 41 U.S.C. § 351(a)(1).
[16] Trinity Services, Inc. v. Marshall, 193 U.S.App. D.C. 96, 593 F.2d 1250 (1978); Berry v. Andrews, 535 F.Supp. 1317 (D.C.Ala.1982).
[17] Common Carriers, 111 Wash.2d at 589, 762 P.2d 348.
[18] Former 49 U.S.C. §§ 3101-3104 (1983) (recodified as 49 U.S.C. §§ 31501-31504 of Subtitle VI by Act (1994)).
[19] See generally, former 49 U.S.C. § 3102(b)(1).
[20] Common Carriers, 111 Wash.2d at 588, 762 P.2d 348; see also Department of Labor & Indus. v. Overnite Transp. Co., 67 Wash.App. 24, 29, 834 P.2d 638 (1992).
[21] Even in its ruling regarding removal, the Federal District Court indicated its belief that there was nothing to support the argument that Congress intended the SCA to occupy the field. See also Diaz v. General Sec. Servs. Corp., 93 F.Supp.2d 129, 137, 142 (D.Mass.2000).
[22] Diaz, 93 F.Supp.2d at 142.
[23] Overnite Transp., 67 Wash.App. at 30-31, 834 P.2d 638, accord, Common Carriers, at 589, 762 P.2d 348 (possibility of interference does not justify preemption).
[24] Pacific Merchant, 918 F.2d 1409, 1424 (9th Cir.1990), cert. denied, 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992).
[25] Pacific Merchant, 918 F.2d at 1424.
[26] ER 201(b).