[No. B206618. Second Dist., Div. Four. Mar. 24, 2009.]

GUSTAVO NARANJO, Plaintiff and Appellant, v.
SPECTRUM SECURITY SERVICES, INC., Defendant and Respondent.

**COUNSEL**

Posner & Rosen, Howard Z. Rosen and Jason C. Marsili for Plaintiff and Appellant.

Anderson & Anderson and Steven A. Micheli for Defendant and Respondent.

OPINION

**MANELLA, J.**—In appellant Gustavo Naranjo's action against respondent Spectrum Security Services, Inc. (Spectrum), for violations of the Labor Code, the trial court granted summary judgment in Spectrum's favor. We affirm in part and reverse in part.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Naranjo worked as a detention officer for Spectrum, which provides security services in holding facilities and detention centers throughout Los Angeles County under a contract with Immigration and Customs Enforcement (ICE), a federal agency. The terms of Spectrum's contract with ICE rely on wage and fringe benefit determinations by the Secretary of the United States Department of Labor (Secretary) pursuant to the Service Contract Act of 1965 (SCA) (41 U.S.C. § 351 et seq.).

On June 4, 2007, Naranjo filed a class action against Spectrum on behalf of himself and other employees who had resigned or been discharged from their employment. The complaint asserted claims under the California Labor Code (§§ 203, 226, subd. (e), 226.7), as well as claims for unfair business practices (Bus. & Prof. Code, § 17200), conversion, and injunctive relief. Spectrum sought summary judgment, or in the alternative, summary adjudication, contending that the SCA provided Naranjo with his exclusive remedies for these claims. On February 11, 2008, the trial court granted summary judgment, concluding that it lacked jurisdiction over Naranjo's claims.

## DISCUSSION

### A. *Standard of Review*

We review the ruling on Spectrum's motion for summary judgment de novo. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].) "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

As Naranjo's briefs on appeal focus exclusively on the propriety of summary judgment on his claims under the Labor Code, we limit our inquiry to these claims. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 [80 Cal.Rptr.3d 6].) Naranjo's first and second causes of action alleged that Spectrum regularly denied its employees meal and rest

periods, and failed to compensate them in accordance with Labor Code section 226.7, which obliges an employer to pay an employee "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." His third and fourth causes of action sought penalties for Spectrum's failure to pay the additional compensation upon the resignation or discharge of plaintiffs (Lab. Code, § 203), and failure to provide plaintiffs with itemized records of their wages and deductions (Lab. Code, § 226).

In seeking summary judgment, Spectrum neither disputed nor conceded Naranjo's factual allegations, but contended that the court lacked jurisdiction over his claims. Specifically, Spectrum alleged that Naranjo's wage claims were preempted by federal law, and that any claim for unpaid wages must be pursued through the administrative process afforded by the SCA. The trial court concluded that it lacked jurisdiction over Naranjo's claims. The court determined that Naranjo had no right to file a private action to recover unpaid wages, and that his sole remedy lay in the administrative process of the SCA. Accordingly, the key questions here are legal, and concern whether the SCA preempts the remedies available to Naranjo in state court regarding the denial of meal and rest breaks and denial of itemized records.

### B. *SCA*

■ The SCA requires government contractors to pay service employees "minimum wages and benefits determined by the Secretary of Labor." (*U.S. ex rel. Sutton v. Double Day Office Services* (9th Cir. 1997) 121 F.3d 531, 533.) "Its purpose is to protect employees of government contractors. Before the [SCA], the federal government had been 'subsidizing' substandard levels of compensation by awarding contracts to those who were able to bid low by paying less. [Citation.]" (*Saavedra v. Donovan* (9th Cir. 1983) 700 F.2d 496, 497.)

The SCA requires each federal service contract in excess of $2,500 to contain clauses specifying the minimum wage and fringe benefits to be paid the employees under the contract. (41 U.S.C. § 351(a)(1), (2).) The wages and benefits are determined by the Secretary in accordance with "prevailing rates for such employees in the locality," or when the employees are covered by a collective bargaining agreement, "in accordance with the rates for such employees provided for in [the] agreement." (*Ibid.*) The SCA specifies that no service contract may pay less than the minimum wage described in the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.). Here, there is no dispute that Spectrum's contract with ICE incorporates a complex form clause specified in federal regulations (48 C.F.R. § 52.222-41 (2008)) that sets forth in detail Spectrum's obligations regarding the SCA.

■ Under the SCA and its accompanying regulations, wages encompass basic rates of pay (29 C.F.R. § 4.51(b) (2008)) and "supplemental pay, such as shift differential" (29 C.F.R. § 4.52(a) (2008)). Fringe benefits include "vacation and holiday benefits," as well as "other benefits, such as insurance, pension[s], etc., which are not required as a matter of law (i.e., excluding Social Security, unemployment insurance, and workers' compensation payments and similar statutory benefits)." (29 C.F.R. § 4.52(a).) The SCA does not provide for overtime pay, but imposes a limit on the extent to which fringe benefits may be included in an employee's regular rate of pay for purposes of determining overtime compensation mandated under other federal laws. (29 C.F.R. § 4.180 (2008).)

Pursuant to the SCA and its regulations, the Secretary issues determinations—usually denominated simply "wage determinations"—for localities, which encompass wages and fringe benefits for different categories of service employees. (29 C.F.R. § 4.52(a) (2008).) Here, the wage determination applicable to Spectrum's contract was attached to the contract. The parties do not dispute that the Secretary made the wage determination by reference to Los Angeles and Orange Counties.

■ Regarding such determinations, the regulations implementing the SCA state: "Information considered. The minimum monetary wages and fringe benefits set forth in determinations . . . are based on all available pertinent information as to wage rates and fringe benefits being paid at the time the determination is made. Such information is most frequently derived from area surveys made by the Bureau of Labor Statistics, U.S. Department of Labor, or other Labor Department personnel. Information may also be obtained from Government contracting officers and from other available sources, including employees and their representatives and employers and their associations. The determinations may be based on the wage rates and fringe benefits contained in collective bargaining agreements where they have been determined to prevail in a locality for specified occupational class(es) of employees." (29 C.F.R. § 4.51(a) (2008).) In addition, the Secretary may give "due consideration" to "wage rates and fringe benefits which would be paid under Federal pay systems." (29 C.F.R. § 4.51(d).)

■ The SCA and its regulations establish a system of administrative procedures for enforcing the SCA. The Secretary is authorized to "hold hearings and make decisions based upon findings of fact as are deemed to be necessary to enforce the provisions of the [SCA]." (29 C.F.R. § 4.189 (2008).) Employees who contend their employer has underpaid them in contravention of the SCA or its regulations may complain to the Secretary, who is authorized (following an administrative adjudication) to ensure that the employees are compensated in accordance with the contract. (29 C.F.R.

§§ 4.187(a), 4.189 (2008).) Employees who contend that the wage and benefit determinations governing the contract are inadequate may also challenge them through administrative proceedings. (29 C.F.R. §§ 4.55, 4.56, 4.187–4.191 (2008).) If the challenge is successful, the contract may be amended to reflect the new determinations. (29 C.F.R. §§ 4.5, 4.55, 4.56, 4.163 (2008).)

## C. Preemption

The key issue is whether the SCA preempts Naranjo's right to pursue additional compensation under the California Labor Code in state court. Spectrum contends that the SCA preempts Naranjo's entitlement to seek redress for any breaches of the pertinent Labor Code provisions in state court. He argues that Naranjo's remedies are found within the SCA administrative process, which constitutes the exclusive forum for his claims. We disagree. As explained below, although the SCA administrative process provides the sole remedies for claims arising under the SCA, the SCA does not preempt Naranjo's suit to recover the additional compensation he seeks under the California Labor Code.

Several federal courts have held that no private right of action exists to enforce the SCA. In *Misc. Service Workers, etc. v. Philco-Ford Corp.* (9th Cir. 1981) 661 F.2d 776, 779–782 (*MSW*), the Ninth Circuit held that an employee's remedies for claims under the SCA lie exclusively within its administrative process. The view that employees have no private right of action against their employer to enforce the SCA has been adopted by at least two other circuits. (*Danielsen v. Burnside-Ott Aviation Training Center* (D.C. Cir. 1991) 291 U.S. App.D.C. 303 [941 F.2d 1220, 1226–1229] (*Danielsen*); *Dist. Lodge No. 166, Intern. Ass'n of Mach. v. TWA* (11th Cir. 1984) 731 F.2d 711, 714–716 (*District Lodge*).)

In *Danielsen*, employees of contractors providing services to the United States Navy initiated SCA administrative proceedings, alleging that their employers' contracts misclassified them under the governing wage determinations. (*Danielsen, supra*, 941 F.2d at pp. 1225–1226.) Before the conclusion of the SCA proceedings, the employees commenced an action against their employers in federal district court, asserting RICO (Racketeer Influenced and Corrupt Organizations Act) claims (18 U.S.C. § 1962 et seq.) and a common law fraud claim for recovery of the unpaid compensation they sought in the SCA proceedings. (*Danielsen, supra*, 941 F.2d at p. 1226.) The District of Columbia Circuit, following the Ninth Circuit's reasoning in *MSW*, concluded that the SCA provided the exclusive remedy to enforce its provisions, and that "[a] private civil action, even couched in RICO terms, will not lie for an alleged breach of the SCA." (*Danielsen, supra*, 941 F.2d at p. 1229; accord,

*District Lodge, supra*, 731 F.2d at pp. 714–716 [following Ninth Circuit's determination in *MSW* that "Congress did not intend to authorize private suits to enforce the [SCA]"].)

 Nonetheless, the absence of a private right to enforce the SCA does not, by itself, preclude suits by employees for unpaid compensation. Within the realm of federal labor law, employees may assert claims in court predicated on wage laws that are consistent with the SCA's goals and operation. In *Masters v. Maryland Management Company* (4th Cir. 1974) 493 F.2d 1329, 1331, an employee under a government service contract asserted an FLSA claim for overtime pay in federal court. In concluding that the SCA did not govern the determination of overtime pay, the Fourth Circuit observed that the SCA and FLSA, though overlapping, were not in conflict on the issue, and remarked that although "[a] laborer is ordinarily entitled to be paid in accordance with the statutes requiring the greatest pay," parts of other statutes may affect the worker. (*Masters v. Maryland Management Company, supra*, 493 F.2d at pp. 1331–1332.)

In addition, at least one federal court has held that the SCA does not preclude a suit under the False Claims Act (FCA) (31 U.S.C. § 3729 et seq.) arising out of violations of the SCA. In *U.S. ex rel. Sutton v. Double Day Office Services, supra*, 121 F.3d at pages 531–532, an employee of a government contractor initiated an FCA action against his employer, alleging that the employer had falsely stated that it had paid its employees wages at the prevailing rate. The Ninth Circuit concluded that the SCA did not bar the suit, reasoning that the FCA attached liability to the employer's false statements regarding its compliance with the SCA, not to the noncompliance itself, and that the employee sought damages as determined by the FCA, rather than by the SCA. (*U.S. ex rel. Sutton v. Double Day Office Services, supra*, 121 F.3d at pp. 534–535.)

 Here, we address another issue not directly resolved by the absence of a private right to enforce the SCA, viz., whether the SCA preempts Naranjo's suit under the California Labor Code. "The supremacy clause of the United States Constitution . . . makes federal law paramount, and vests Congress with the power to preempt state law. (U.S. Const., art. VI, cl. 2; [citations].) There are four species of federal preemption: express, conflict, obstacle, and field. [Citation.] First, express preemption arises when Congress 'define[s] explicitly the extent to which its enactments pre-empt state law. . . .' [Citations.] Second, conflict preemption will be found when simultaneous compliance with both state and federal directives is impossible. [Citations.] Third, obstacle preemption arises when ' "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." ' [Citations.] Finally, field preemption, i.e., 'Congress' intent to preempt all state law in a particular area,' applies 'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.' [Citations.]" (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935–936 [63 Cal.Rptr.3d 50, 162 P.3d 569].) Generally, " ' "[c]ourts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it." ' " (*Ibid.*, quoting *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 815 [135 Cal.Rptr.2d 1, 69 P.3d 927].)

 Several courts have held that the SCA does not preempt suits for wages, fringe benefits, and other compensation predicated on state or local laws consistent with the SCA and its goals. In *Labor & Indus. v. Lanier Brugh* (2006) 135 Wash.App. 808, 811 [147 P.3d 588, 589–590] (*Brugh*), a state agency sued employers providing services under contract to the United States Postal Service (USPS), alleging that the employers had failed to comply with state law regarding overtime compensation. The contract between the employers and the USPS contained a clause stating: " '[N]othing in this provision relieves the suppleir [*sic*] . . . of any other obligation under law or contract for the payment of a higher wage to any employee.' " (*Brugh, supra*, 147 P.3d at p. 590.) The appellate court concluded that the SCA did not preempt the state agency's claims, reasoning that Congress, in enacting the SCA, did not expressly preempt state overtime laws; that the SCA did not "occupy the legislative field"; and that the contract expressly obliged the employers to comply with state laws according employees " 'a higher wage.' " (*Brugh, supra*, 147 P.3d at pp. 592–594.)

Similarly, in *Butler v. Fidelity Technologies Corp.* (La.Ct.App. 1996) 685 So.2d 676, 677–678 (*Butler*), the plaintiff sought penalties from his employer under Louisiana law for failure to pay his wages within three days of his discharge from employment. The appellate court rejected the employer's contention that administrative relief through the procedures authorized by the SCA constituted the plaintiff's exclusive remedy, stating: "The purpose of [the state statutes] is to compel the employer to pay the earned wages of an employee promptly after his dismissal or resignation. In contrast, the SCA's purpose and objective is to ensure that federal service contract employees are treated equally with employees in that locality by requiring the contractor to pay the prevailing wage and benefits. [The state statutes] do not prevent or interfere with the attainment of these federal goals. In fact, [they] help to effectuate the SCA. Depriving Louisiana employees of this remedy would be inconsistent with the objectives of the SCA when the SCA seeks to ensure that these same employees are guaranteed the same benefits as other employees in the same locality and state." (*Butler, supra*, 685 So.2d at p. 680.)

Finally, in *Lebron Diaz v. General Sec. Services Corp.* (D.P.R. 2000) 93 F.Supp.2d 129, 131, the plaintiffs, who were employed as security guards in federal courthouses, initiated an action in the Superior Court of the Commonwealth of Puerto Rico, seeking fringe benefits mandated by Puerto Rican law. After the action was removed to federal court, the district court found that it lacked jurisdiction over the action and remanded it to the superior court. (*Id.* at p. 138.) In so concluding, the district court determined that the SCA did not preempt the plaintiffs' claims for fringe benefits under Puerto Rican law because under its regulations, the SCA applied only to those fringe benefits " 'not otherwise required by Federal, State, or local law.' " (*Lebron Diaz v. General Sec. Services Corp., supra,* 93 F.Supp.2d at pp. 135–136.)

The weight of authority thus recognizes that the SCA neither expressly preempts Naranjo's suit in state court nor reflects a congressional intent to bar his suit through "field preemption," that is, through a comprehensive scheme of remedies that leaves no room for such suits (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc., supra,* 41 Cal.4th at p. 936). The focus of our inquiry, therefore, is narrowed to whether the SCA preempts Naranjo's action in state court because the litigation would conflict with the SCA or hinder the achievement of its goals. We conclude that it would not.

■ We begin with Naranjo's claims under Labor Code section 226.7, which provides: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." As our Supreme Court has explained, the additional compensation identified in subdivision (b) of this provision is not a penalty, but a form of "premium wage" paid to employees to compensate them for an adverse condition they have encountered during their work hours, namely, the potential hazard to their health and welfare from the denial of rest and meal breaks. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102–1111 [56 Cal.Rptr.3d 880, 155 P.3d 284].) As such, the additional compensation is akin to overtime pay, which is another form of premium pay. (*Id.* at pp. 1109–1110.)

■ Viewed from the perspective of the SCA, Naranjo's claim under Labor Code section 226.7 is also properly categorized as one for higher or additional wages. According to the regulations implementing the SCA, the additional compensation available under subdivision (b) of Labor Code section

226.7 cannot be classified as a fringe benefit, as it is mandated by state law. (*Lebron Diaz v. General Sec. Services Corp., supra*, 93 F.Supp.2d at pp. 135–136; 29 C.F.R. § 4.52(a) (2008).) Because employees earn the compensation as the result of encountering an adverse condition during their regular working hours (the denial of meal and rest breaks), the compensation is appropriately classified as "supplemental pay," as it closely resembles a "shift differential," which the SCA classifies as wages. (29 C.F.R. § 4.52(a); see 2 Snyder, Compensation and Benefits (HR Series) (2009) § 21-119, pp. 21–66 [noting that wage determinations may include wage provisions relating to "shift, hazardous, or other similar pay differential"].)[1]

That Naranjo seeks additional wages within the meaning of the SCA, however, does not bring his claims within the scope of the SCA or limit his remedies to those available in the SCA administrative process. As explained above, the goal of the SCA is to secure for employees "minimum wages and benefits determined by the Secretary of Labor." (*U.S. ex rel. Sutton v. Double Day Office Services, supra*, 121 F.3d at p. 533.) With respect to state-required wages exceeding the minimum levels set by the Secretary, the form clause in Spectrum's contract specifying its duties under the SCA states unequivocally: "Nothing in this clause shall relieve the Contractor . . . of any other obligation *under law* or contract for payment of a *higher wage to any employee*." (48 C.F.R. § 52.222-41(e) (2008), italics added.)[2] Because federal regulations mandate the language of the form clause, this provision reflects an intent to preserve the operation of state laws providing for higher wages. As the court remarked in *Brugh*, the import of the provision is that the minimum wages set by the Secretary "are a floor upon which state laws can build." (*Brugh, supra*, 147 P.3d at p. 593.) Moreover, nothing in the form clause or the SCA obliges the employee to seek the state-required additional wages through the SCA administrative process or suggests any bar to a suit for such wages.

We therefore conclude that Naranjo's action to recover additional wages under Labor Code section 226.7 neither conflicts with the SCA nor

---

[1] Under the SCA regulations, wages encompass shift differential and other components of supplemental pay, as defined by the Department of Labor, Bureau of Labor Statistics Employment Cost Index (ECI). (29 C.F.R. § 4.52 (2008).) For purposes of the ECI, supplemental pay includes " 'premium pay for overtime and work on weekends and holidays, shift differentials, and non-production bonuses.' " (Payne et al., *Total Offset Method: Is It Appropriate? Evidence from ECI Data* (2001) 11 Fall J. Legal Economics 1, 13, fn. 3, quoting U.S. Dept. of Labor, Bur. of Labor Statistics, Employment Cost Indexes, 1975–1997 (July 1998) Bull, 2504, p. 1.)

[2] Neither party directed the trial court's attention to this provision of the lengthy form clause.

hinders the achievement of its goals. The wage determination attached to Spectrum's contract sets forth the minimum basic wage rates for a large number of employment categories, including Naranjo's category of detention officer; in addition, it contains provisions setting minimum rates for night pay, Sunday pay, and a "[h]azardous [p]ay [d]ifferential," but none regarding additional pay for the denial of meal and rest breaks. Naranjo's suit thus seeks state-required wages that exceed the minimum wages determined by the Secretary. In view of the language of the form clause in Spectrum's contract and the authorities discussed above, Naranjo's action under Labor Code section 226.7 does not conflict with the SCA and promotes, rather than impedes, its goals.

■ We reach the same conclusions regarding Naranjo's claims under Labor Code sections 203 and 226. Labor Code section 203, subdivision (a), imposes a penalty upon employers who willfully fail to pay discharged employees their full compensation in a timely manner.[3] Naranjo's complaint seeks this penalty for the additional wages allegedly not paid under Labor Code section 226.7. ■ As explained above, Naranjo may properly seek the wages in a state court without impeding the operation of the SCA. In view of *Butler*, we conclude that Naranjo's litigation of his request for a penalty under Labor Code section 203 also would not hinder or conflict with the SCA.

■ Finally, Labor Code section 226 obliges employers to provide their employees with records of their earnings and deductions, and imposes penalties upon employers who knowingly and intentionally fail to supply the records.[4] In contrast, under the SCA and its regulations, employers must maintain records and disclose them to the Secretary, but are not required to

---

[3] Subdivision (a) of Labor Code section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

[4] Subdivision (a) of Labor Code section 226 provides: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and

disclose the records to employees. (29 C.F.R. § 4.6(g)(1) (2008).) The employer's sole duty regarding employees is to post a form notice in a prominent place regarding the wages and benefits required under the SCA. (29 C.F.R. §§ 4.183, 4.184 (2008).) The form clause in Spectrum's contract specifying its SCA obligations imposes no duty upon Spectrum to provide wage and benefit records to its employees. (48 C.F.R. § 52.222-41(i) (2008).) As the evident goal of the employer's record-keeping duties under the SCA is to ensure compliance with the SCA, we conclude that Labor Code section 226 complements the SCA and facilitates its goals by enhancing scrutiny of the employers' conduct.

 Spectrum's reliance on *Southern Cal. Lab. Management etc. Committee v. Aubry* (1997) 54 Cal.App.4th 873 [63 Cal.Rptr.2d 106] is misplaced. There, the United States Department of the Army entered into an agreement with several California state entities for the construction of a flood control system. (*Id.* at p. 877.) The California Department of Industrial Relations ruled that the project was subject to the Davis-Bacon Act (former 40 U.S.C. § 276a), the federal prevailing wage law governing construction contracts, rather than California's prevailing wage law (Lab. Code, § 1771 et seq.). After employees of contractors working on the project challenged the ruling, the appellate court held that the Davis-Bacon Act preempted California's prevailing wage law for projects under federal control, concluding that the statutory schemes constituted "separate, but parallel" systems, with the state law applying to state contracts and the federal law applying to federal contracts. (*Southern Cal. Lab. Management etc. Committee v. Aubry, supra,* 54 Cal.App.4th at pp. 879–887.) As the court observed, California's own prevailing wage statute and regulations recognized the inapplicability of state law to contracts controlled by the federal government. (*Ibid.*) No such recognition exists in the Labor Code provisions at issue here. Instead, as explained above, Naranjo's claims under the Labor Code complement the provisions of the SCA, and his litigation effectuates its goals. We therefore conclude that summary judgment was improperly granted on his Labor Code claims.

---

address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

Subdivision (e) of Labor Code section 226 provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

## DISPOSITION

The judgment is reversed with respect to Naranjo's claims under Labor Code sections 203, 226, and 226.7, and the matter is remanded for further proceedings in accordance with this opinion. The judgment is affirmed in all other respects. Naranjo is awarded his costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 24, 2009, S172566.